Mr. Freedman May it please the Court, I'm Frank Freedman representing McAirlaids. Ben Rottenborn is with me at Council's table. This appeal involves trade dress protection and specifically the functionality of McAirlaids absorbent pads. For purposes of today's discussion, functionality means the product feature is essential to the use or purpose of the device or affects the cost or quality of the device. Put another way, it's functional if, quote, it's the reason the device works. That's what the Supreme Court said in traffics and what this Court reiterated. Describe the connection between trade dress protection and functionality. If a design or mark is merely ornamental or aesthetic, it's appropriate for trade dress protection as a source identifier like the Nike swoosh or the iconic Coke bottle. If the contested feature actually makes the product perform better, gives a competitive performance edge like the dual springs in traffics, then it's probably more appropriate for a patent case. And that's what I'm getting at is whether or not if you have trade dress protection versus a patent, does one or the other essentially assume functionality or non-functionality? A patent is frequently what's going to happen is you're claiming, in fact, that's what happened in traffics, is the advance that was made in the patent there, they said this is a performance enhancing advance, the dual spring. And so that was appropriate for patent. That's also why they lost trade dress on the way back because they had admitted it was functional and utilitarian. You can, however, get a trade dress as well as a patent, the patent being for the process and the trade dress being for a mark that people identify. I still speak to trade dress with respect to functionality. Is that assumed that it's non-functional under trade dress? It is assumed that it is non-functional, I'm sorry, yes. It assumes that it does not make the product perform better, it makes it a source identifier so we know who made it or what kind of product it is. The patented advancement by McAirlades here with respect to its absorbent pads was a revolutionary process for binding fluff pulp without using glue or binders. And this is particularly good for an absorbent pad because glue and binders in the pad take up space but they don't absorb liquid. So a glueless pad really is a major step forward. And that process, that glueless process is what was patented. So McAirlades pads are bound by extreme pressure as they pass between embossed rollers and bonding occurs at the raised pressure points between these two rollers. To the burden shifting question, the issue on the burden of this, it seems as though even if at least the way the district court posited this, the burden definitely had to shift in a shifting manner in light of the presumption that was there. But the record does contain pretty strong evidence that would have indicated that that burden would have shifted. So is there really an error there? Well there are, that's a couple of questions I guess. It starts off with the burden being on, the other side had to come up as we have a USPTO patented trade dress. And we had to prove to them that hey this is appropriate for a trade dress, it's non-functional. And we did that. So the burden goes to the other side. The only way that the shift comes back is if under traffics, if the other side can prove strong evidence of functionality. Now it's got to be very strong. In traffics it was irrefutably strong essentially. Because we're on summary judgment. We're not getting to the summary judgment question. I mean you can survive the burden shifting question, but still the summary judgment question is going to be there. It could be strong evidence, it doesn't mean it's all the evidence. Well it has to be very strong though. But then we do have, if it shifted, and we don't think it was, obviously our position is for summary judgment if everything is taken in best light to us, that there's copious evidence. They keep saying in their brief there's ample evidence. That's not the standard. The standard is there's no genuine issue of material fact in dispute. Here there's a lot in dispute. But the point is, even under traffics, we then have, I think it's called a heavy burden to come back. But we have evidence. So there's a big difference between this case and traffics. And I'll probably, well I'll get to that now, because- . . . . . . . . .         . . . . . . . . . . . . . . . . . . . . reaming . . . . . . . . . . . . . . . . .  . . . . . . . . . So just sort of clarify for a moment, that the piece of where the call        . Let's look briefly at a sampling of the evidence because are a lot of it first of all the designer of the pattern Andreas Schmidt said he picked the pattern quote because it looked nice that's a JA319-20 the inventor of the patented bonding process Alexander Maximov testified that what comes out of the machine can be modified this is a quote so we can adjust the design it is not dependent on the process JA417 as we already alluded to our expert and their expert confirmed that myriad other patterns could work just as well interchangeably triangles, diamonds, cartoon characters squares, ovals help us understand at what point the existence of available alternatives matters ok because there is some question the district court did not find it to be a part of a prima facie case if I'm remembering correctly correct well what you have in this case and I apologize I'll get right to I just want to give a brief set up for it what you have is a number of people testifying that the dot design is not functional and that all these prototypes everything Mr. Gawley said at JA252-53 our expert said all the prototypes that are in appendix 6 they would work just as well as what you have basically the other side agreed too what we're asking for is not that difficult if you have dots and you want to put cartoon characters on them if you want to put puppy dogs if you want to put ovals the key is and again this is a not common area of the law so I'll mention there's three in response to my question what I'm getting at is the fact that the Supreme Court seemed to suggest that the availability of alternative designed only comes up after the functionality of the product has been established well it doesn't it isn't really that way it is only precluded if functionality is established I'm sorry I misspoke you're right it's precluded after the functionality of the element has been established the court need not speculate about this so if it's irrefutable if you have something like you had in Trafix which was these people had already gotten a patent for it they then said in patent cases this is an improvement this thing is in fact functional and then they decide to come in and say oh it's really a trade dress they're out of luck then you don't look at other alternative designs but otherwise you do and again here we said all the prototypes in appendix 6 Mr. Gawley said that now Mr. Gawley has 30 years experience in the field and he's the president of the company and what what Kimberly Clark succeeded in doing was convincing the district court that it's just say so if the corporate executives of a company say something and that's what the judge said I'm dismissing the say so well there are some cases where there's conclusory say so but in this case notably Kimberly Clark didn't move to strike Mr. Gawley's declaration they didn't challenge his knowledge and the reason why probably is that their expert Mr. Mango says at JA 1657 and JA 1660 through 62 that these people knew more about the process than he did so they are not just some corporate executive making a conclusory statement Is there ever going to be or how likely is it that in your view that summary judgment will be appropriate in the context of a trade dress infringement action which seems to necessitate expert testimony can you imagine a situation that you would think would be appropriate for determination on summary judgment in a similar context and I do want to clarify where I started to go before I just want to clarify this is functionality which is step one and it was bifurcated at the request of Kimberly Clark there's also secondary meaning and likelihood of confusion so those still have to go and those could frequently be the subject of a summary judgment functionality occasionally I'm not saying it can't happen there's a case called Bowman where there was yellow cable and for digging underground the court and the experts people agreed you know what yellow cable is a lot better than dark cable you can't see when you're digging in the ground it's possible but it's rare and that's the thing about traffics was a rare case because the other side had not gotten here's well before I do that I just want to run through in case you know their argument is don't believe all the say so and we think you have to believe the say so because their expert admitted our people knew what they were talking about you also have the USPTO's findings you have our patent language which says that the advance is the process not the dots not anything else in fact it says there are a variety of other designs there could be then you have their patent application for good nights and that's JA398 is one of the best pages in here that's their application for the dots and they say things like the point bonds can have various sizes and shape they're generally circular in one suitable embodiment but it's understood the bond points can have any suitable size or shape and then they add it's understood that the point bonds can be arranged in any suitable pattern so there's a ton of evidence right there now I would like to briefly explain why this case is different from traffics because in traffics it was foreclosed even though this is an expert case and traffics really wasn't because it was foreclosed just because of the circumstance that they already had a in traffics the dual lock was the reason that the pad worked better here the dot pattern is not the reason and we cite all kinds of people who say the dot pattern is not the reason it works better Mr. Gawley said that our experts said that more importantly it was not claimed to be the reason the pad worked better in the traffics patent they claim that's why it worked here we didn't claim that we claim the work better you could have puppy dogs or hearts or shamrocks or whatever you want on the pads it would be the same there's nothing special about a dot you have in traffics there wasn't a USPTO registration we have one going to the burden shifting and in traffics there was no rebuttal evidence so they were foreclosed because they had argued it was an improvement we have tons of evidence to suggest rebuttal even if they were to prevail which they can't but most perhaps importantly here there's no evidence that the pattern works better and they tried I would be remiss if I didn't bring up the fact that and it's at the back of our opening brief at pages 63 and 763 of the appendix they argued at the beginning of the case that the dots were stronger and they did that based on a one day testing by a 19 year old intern who was left unsupervised and then they actually tried to run with that so as far as credibility goes for purposes of summary judgment on testing that's another fact that is devastating for them I think so we think that the district court just failed to consider the evidence in best light to us we think there's abundant evidence and we should have at least gotten to a jury on functionality we still have to go on the remaining two issues of secondary meaning and likelihood of confusion thank you very much thank you Mr. Cleveland good morning your honors my name is Andrew Cleveland and I appear on behalf of Kimberly Clark Corporation may it please the court the sole issue in this appeal is whether the row of dots that McAirlades uses on its absorbent pads is functional and therefore undeserving of trademark protection the district court below found that it was whether there's an issue of fact created by the evidence presented to that does it exist as a matter of law for the trial court to make a decision that's correct your honor that's a more precise way of stating the issue that's right we're not here to decide whether this thing is functional or not we're just deciding whether or not there's enough evidence on both sides the other side has pointed to quite a bit of what appears to be evidence indicate otherwise on it that would create an issue of fact and how do you address that other evidence including the fact that the trial judge seemed to have taken only portions of one expert testimony not looked at the rest of it why should we get in the middle of this is what we're basically questioning why don't we just let this matter be decided outside of summary judgment let me address that your honor because there is evidence that you've just heard rehearsed to you and what it primarily consists of is the argument the assertion that because some expert testified that the row of dots is not functional that therefore summary judgment should not have been granted but if you look at the registration isn't that considered non-functional evidence of non-function under the law what the trade dress registration does is it creates a presumption of validity that then under this circuits precedent in retail services shifts the burden of production of evidence to us Kimberly Clark and once we present strong evidence of functionality then the burden of production falls back upon mccare lades and the ultimate burden of proof remains with mccare lades and that's as any presumption would work under federal rule of evidence 301 as this court said in retail services certain weighing of the evidence weighing of conflicting evidence to get to the conclusion that it reached no it did not what it had to do as it did here is to look at the whole record and determine as judge win says there was not a genuine issue of material fact but there was not and that's where I'm going to address for example the assertion that mccare lades executives and mccare lades expert testified that the row of dots design was not functional if you look at the actual testimony itself there's no there there just conclusory assertions there's no data testing there's no comparative evaluations it's simply their conclusory assertions it is not enough to withstand summary judgment to simply create conclusory assertions anymore than a party could simply stand on its denials in an answer about this process no they did not well he did he did say about their process correct what I want to correct though is the assertion that our experts somehow said that any embossing pattern could be used to the same performance level as the embossing pattern of the row of dots what he said is that you could use any embossing pattern to actually fuse the binding together you could use puppy dogs to actually fuse them together what he didn't say is that any of those particular designs would actually perform as well as the rows of dots to not violate the registration here I mean you've got a particular pattern here and I've been trying to figure this thing out we don't get these cases very often fascinating but I don't understand this business of it could be puppy dogs and everything else up there I mean basically you can put these indentations in there you just got to put it in a different pattern can't be in the same dimensions so I could you make it just a little space them a little further or put them in a different place actually no your honor that's what the Carolades expert testified that and a few there's a few areas where he says that you couldn't because it wouldn't be functional or you couldn't because the registration doesn't allow you to do that you couldn't because it would change the performance of the product if you change the design if you use something other than the rounded circular rows of dots the product would not be as absorbent it wouldn't be as strong or weaker correct that's exactly correct and that's the testimony of Carolades own expert he testified in fact that you needed a rounded shape in order for the product to work well that if you designed if you use the design other than something with a rounded shape something with a sharp corner to it such as a square hexagon or a rectangle that the sharpness of that shape would cause the pulp fibers that are used to manufacture a Carolades product to be damaged thereby causing the product to weaken and lose its integrity and in fact here's a direct quote from their expert he said you quote pretty much need to round the corners it's kind of circular to me you pretty much need to round the corners on whatever shape bond you do to keep from damaging the fibers that's a joint appendix 1452 and I want to go back to a very critical point that I think you raised Judge Childs about what's really the purpose of the functionality doctrine and it goes to the issue of patent law it's patents that are supposed to provide limited protection for a limited period of time if one can use a trademark to protect a functional device which is supposed to be protected by patent law one could obtain a perpetual monopoly over what is a functional device when the patent laws say you're only supposed to get a limited protection that's what the Supreme Court said in Qualitex when it said if a product's functional features could be used as trademarks a monopoly over such features could be obtained without regard to whether they qualify as patents and could be extended forever that's exactly the problem we face here we have a functional trademark that one is trying to use the trademarks to extend and obtain a perpetual monopoly over and though contends today that its row of dots design was purely decorative or ornamental the record evidence overwhelmingly demonstrates that it was a functional device for example when McGarrelades promoted its device, its row of dots design, it touted it as being the product of German engineering that whose, by the way, unique bonding pattern, that's a quote unique bonding pattern provides increased surface area for excellent acquisition and those can be found at Joint Appendix 208 and Joint Appendix 184 what they're saying there is that the rows of dots design makes their product more absorbent a rather critical feature for a product absorbent pads that is used to soak up liquids and when McGarrelades sought its patents in particular the 612 patent for an absorbent fiber web one of its claims the patent which sets forth in each of its claims what it believes to be the features of the device, one of its claims is specifically for a dot shaped embossment area and that can be found at Joint Appendix 499 and McGarrelades actually tested its row of dots design too, and when it tested it, it found that the row of dots design actually provided what's called greater elongation it stretches more essentially, and what McGarrelades admitted in an interrogatory response which can be found at Joint Appendix 360 is that a product with greater elongation is important because one with less stretch has a greater tendency to rip which requires more care, more time, more cost when loading it onto a converting machine, what one has to then go back to is the very test of traffics which says that a trade dress or a trademark is functional if it is either essential to the use or purpose of the article or if it affects the cost or quality of that article, I heard my colleagues say that the test is whether the device works, that's not what the Supreme Court said in traffics it said it's whether it's essential to the use or purpose or if it affects the cost or quality and in fact in traffics the Supreme Court was clear that the Sixth Circuit when it had denied summary judgment there it had reversed the grant of summary judgment, that such a standard of competitive necessity or essentiality was not necessary to show functionality because the point is that anything that affects cost or quality makes it functional and therefore it falls within the scope of patent law not trademark law that's what makes the test whether it affects cost or quality and let me talk if I may, a little bit about McEarlade's expert it was asserted I believe that McEarlade's expert said that any design could work on McEarlade's product Dr. Murray, that's exactly right that any design could work that all the shapes are essentially fungible, but I think that needs to be tested against something that McEarlade's said in its reply brief, which is that if you look at page 5 of the reply brief, you will see that McEarlade's has set forth in a block quote an excerpt from Dr. Murray's testimony, it's edited the sentence is pad performance, and pad performance has been bracketed indicating that it is substitute edited language pad performance is not dependent on the bonding pattern being a round circular point but if you go back and look at the testimony of what Dr. Murray said and examine what that bracketed language replaced here's what he really said I want to be clear, and I'm quoting I want to be clear subject to those conditions of fiber length matching the spacing of the elements and sufficient area to capture some of the fibers, and sufficient pressure to form the fusion bonds, it's not dependent on it being a round circular point. What McEarlade's excerpt leaves out what it replaced with its own bracketed language is precisely the condition that makes the row of dots design functional what Dr. Murray is saying here is that the shape used on McEarlade's product is dictated by certain engineering considerations including spacing shaping and size. It's those considerations, everything is subject to those considerations and those conditions it's what makes McEarlade's row of dots design functional and if I may turn to the alternative designs issues in this case essentially what McEarlade's is saying is that because there conceivably could be other designs that could conceivably work as well as McEarlade's row of dots design that that must mean McEarlade's design is not other than that conclusory assertion McEarlade's provides no data to show that those other alternative designs would in fact work as well. One cannot create a genuine issue of material fact one cannot survive summary judgment by merely putting forth supposition speculation and that's what this is speculation does not create a genuine issue of material fact. But even more fundamentally than that regardless of whether there may be and I emphasize maybe because there's no other evidence in this record that other designs would actually perform as well just because there may be Doesn't the patent say that? Doesn't the patent itself say that other patterns, rounded patterns could be used, elliptical oval What the patent says is that other design shapes could be used to fuse the fibers together What it doesn't say is that other designs would work equally as well in terms of absorbency strength and manufacturing capability You could use those to fuse it together. That doesn't mean that everything is going to work as well. It's going to be as absorbent or as strong or anything else. Doesn't say that And even if it did the point is that even if there were maybe more than one solution to an engineering problem, that does not take away from the fact that the row of dots design here is also an engineering functional solution to that same problem What this means is that all of the designs are functional not that none of them is And that's why the Supreme Court in the traffic's decision once it determined that the design at issue there was functional determined that there was no need to engage in any further assessment of alternative designs. Because the fact is that once one finds something is functional, it's no excuse to say that there are other alternative designs out there And here, the evidence is overwhelming that the row of dots design that McAirlades uses is in fact functional We have the promotional activities of McAirlades We have their own patents We have their own testing data We have the testimony of their own expert that all of this is functional What this case comes down to and what it really means is this and is the District Court, I think, properly recognized McAirlades product looks the way it does because it makes it a better absorbent pad not in order to identify who made it That's what trademark is supposed to do It's supposed to tell you who made it But this pad We're dealing with summary judgment So we're going to look at this evidence in a light most favorable to the other party And here you dismissed maybe the testimony statements of the employees including the President as being conclusively And yet, these are people who have been substantially into business It's testimony It's under oath So it's evidence And we've got to look at that evidence in a light most favorable to the other side And ultimately what happens even if we decide Okay, well, there's some evidence there It's not the end of the day for you It means you now just got to go and convince at the next level that this has this functionality It meets the functionality test Yes, Your Honor. Their testimony is evidence. The question is does that create an issue of material fact When viewed in a light most favorable to them, does it create an issue? That's correct And I turn to the Celotex and the Liberty-Lauberty decisions, which says that a party opposing a motion for summary judgment must come forth with specific facts to demonstrate that there's a genuine issue of material fact. A conclusory assertion is no different than standing on your denials in a complaint saying, I didn't do it Is this the only way this can be functional? Was it what you call the best way or what is it that makes this functional? They could have done many other things to try to show that it was functional Are alternative designs available? Are alternative designs? Not that we're aware of, Your Honor. Because there's been no data to show that alternative designs actually work. The only evidence they essentially have is the assertions of their executives and their expert. And I turn to the Sixth Circuit's recent decision in Groneville, where they say on this precise issue about whether putting a witness on the stand saying it's not functional is sufficient to survive summary judgment. That wasn't a summary judgment case, but it was a case in which the Court of Appeals reversed a trial court, allowing it to go to a trial, saying it should have never gotten that far. Do your experts say there's a lot of possibilities that could be used to actually cause the fusion of the fibers to go together? He did not say, and he was stout in refusing to say, that each of those designs would work equally as well in terms of absorbency, strength, and manufacturing capabilities. It's limitless what number of shapes you could use to actually cause something to be fused. It's not limitless, and that's why the engineering considerations come into play here as to which shape actually causes the absorbency, the strength, and the manufacturing capabilities of the product to work. And to get back to the point about the assertions of executives constituting or potentially creating a genuine issue of material fact... What are we to make of the fact that there seems to be relatively little testing either way? There's really very little testing as to whether or not the dots could be replaced with a puppy dog or whatever without affecting the absorbency and strength. The only thing that was discussed is that changing the arrangements of the dots affected either absorbency or strength, but no other design element or no other feature. I see my... I have five seconds. I'd like to take time over that to answer your question if I may. And then perhaps turn back to Judge Winn for one final comment, which is there was a lack of testing in this case. However, there is an abundance of evidence that the row of dots design did provide functional characteristics to McEarlade's trade dress design. The promotional activities, the patents themselves, there was testing data for the row of dots design showing that it provided greater elongation and stretchability, and their own expert testified that if you changed the shape, if you made it less than rounded, that that would make it damage the fibers of the product and cause the product not to perform. What there wasn't testing data on this, and what McEarlade's refused to provide was that somehow or another the other designs that they hypothesize like diamonds or puppy dogs or whatever else you might hypothesize, that those would actually work. They've never provided that data. They simply say it. They'd work just as well. It's speculation, and that's why the speculation doesn't create a genuine issue of material fact. And if I may just one minute, I do want to talk to Judge Winn about that because I do think the Sixth Circuit had it right when they said in the Groneveld case, and that's at 730F3 at 507, the bare act of putting a manager on the stand to claim that non-functionality, to claim that an article is non-functional, is not sufficient to create a triable issue of fact. If that were the law, any plaintiff could get to a jury trial by simply mouthing the legal conclusion that its product design is non-functional. And that's the issue that was faced here by the District Court. That's what he got right, and that judgment should be affirmed. Thank you. Thank you, Mr. Cleaborn. Mr. Friedman, you have a few minutes for rebuttal. What Kimberly Clark just delivered, in essence, was a closing jury argument. I mean, they argued some facts, some disputed facts. I wish it were as clear to me as it seems to be to you. Kimberly Clark has come back with testimony that talks about the role that the pattern plays, the spacing of the dots. Correct. What they say is, having responded, you then had to meet that with something other than assertion. What specifically are you saying you have done to meet that other than supposition? First of all, what they're saying is wrong, and a lot of the facts that they're citing are skewed in best light to them. Having said that, they say there doesn't have to be testing from us. There was no testing from them, except for incredibly botched, non-credible testing from a 19-year-old. That cuts against them. We did have testing with another, the harsher, the lines. Our experts said that it was within the margin of error. It was no different. I don't know what you're saying. That wasn't clear. There is a big discussion. What I guess I would tell the Court is, at pages 8 to 12, we were not trying to hide the ball. If you don't have any bonding, if you don't have any bonding at all . . . Let's go to the questions of absorption and strength for a moment. In the harsher case, which was the T-126, I think it's . . . Let's not do that. Let's stay with the facts of this case. It is this case. We had two different prototypes at first, and then we got rid of one because people liked the other. That one, there was testing. They were the same within reasonable areas. It was within 1%. As to what? As to tensile strength, absorption. Elongation was different. The point is, it's not our burden. We had the prototypes. It's their burden on summary judgment to prove that there's no question of fact. Judge Duncan asked you, as to what? You said, as to tensile strength, absorption. That was kind of quick. Was it as to tensile strength, or was it . . . The testing dealt with both, and our experts said it was within, and Gawley says in his declaration, they're within the same . . . They're close. They also say that all the prototypes . . . There's a case called Thomas and Betts that says you can have hypothetical prototypes. We don't have to come forward with all kinds of prototypes. What I want to make clear is that at pages 8-12 of our brief in reply, we weren't trying to hide the ball. It's obvious that if you don't have any bonding, it's not going to work, and if you do have bonding . . . What I'm trying to get to is, assuming for purposes of my question, that evidence has been put forward to show that the row of dots affects how well the product functions. What do you point to as meeting what becomes your responsibility at that point to come up with something that meets or contradicts that? There are a lot of them. Okay. It doesn't need to be round. They're saying that the dots do it. It's not the dots. What I'm asking is not argument, but what facts did you put forward? What testing? There wasn't much testing. There was some. Any testing? There was testing that showed the harsher pattern and this pattern pretty close. Elongation was different. As to what? As to tensile strength and absorption, and it was not. It was different with elongation, but we have experts. If you read the Gali Declaration and others, the point is, they have got us hung up on testing, which isn't even our burden. They're trying to get us to say dots. I'm sorry. I'm asking for my benefit in understanding this in the context of summary judgment. Just for purposes of my question. For purposes of your question, we came forward with evidence from Gali, from Schmidt, from our expert, that these dots weren't any different from any other design within the parameters. Of course, it's within the parameters. If you had no dots, it wouldn't matter. The parameters are on pages 8 to 12 of our reply. We have spacing, bond shape, bond point size, and there are a lot of sites I could give you. To accomplish what? To accomplish the pads working, the pads not falling apart, and the pads, you know, they have to not fall apart and they have to be able to absorb stuff. But that's in general. As far as, once you meet those requirements, and those requirements are set out between pages 8 and 12 of our brief, any pattern will work. And that's what all of our people said. And that's what the prototype said. And I'd like to point out, in our patent, they're not dots. They're hexagonals. I realize, could I just say one other thing? Their expert, Mango, talked about triangles and squares being perfectly fine at 1668- It's a matter of chamfering. It doesn't have to be round. Thank you. Thank you very much. We will ask the clerk to adjourn court for the day and come down in group council.
judges: Allyson K. Duncan, James A. Wynn, Jr., J. Michelle Childs